

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

August 6, 1975

The Honorable Grover E. Murray
President
Texas Tech University Complex
P. O. Box 4349
Lubbock, Texas   79409

Opinion No. H- 659

Re:  Whether Regents of a
State college may provide for
automatic termination of employee
faculty member who becomes a
political candidate.

Dear President Murray:

You have requested our opinion concerning the validity of a policy of
the Board of Regents of Texas Tech University, which provides:

> The Board of Regents does not undertake to determine
> whether an employee or a member of the faculty of the
> Institution shall become a candidate for, or shall accept
> a public office.  In the event, however, that any member
> of the faculty or any employee does become a candidate
> for, or does accept, public office, such person shall
> automatically cease to be a member of the faculty
> or an employee, and his or her connection with the
> institution will be dissolved immediately.

You have asked whether this policy may be effectuated by requiring a leave
of absence without pay and termination of employment when a faculty member
or staff employee becomes a candidate for and accepts a public office, respec-
tively.

In Broadrick v. Oklahoma, 413 U.S. 601 (1973), the Court upheld an
Oklahoma statute which prohibited classified employees from taking part in
a broad range of partisan political activities, including candidacy for public
office.  Conceding that the statute impaired the First Amendment rights of
government employees, the Court held such impairment justified as an attempt
to:

p. 2889

>[attract] greater numbers of qualified people
>by insuring their job security, free from the
>vicissitudes of the elective process, and by
>protecting them from 'political extortion'.
>413 U.S. at 606.

Similar restrictions contained in the Hatch Act, 5 U.S.C. 7324, were upheld in United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548 (1973). The restrictions on the exercise of employees' First Amendment rights were considered necessary to achieve impartial execution of the laws, to avoid the appearance of "political justice," to avoid the building of a "powerful, invincible and perhaps corrupt political machine," and to insure that employment and advancement do not depend on political performance. 413 U.S. 565, 566.

While these goals may be better satisfied by the broader restrictions involved in Broadrick and Letter Carriers, and although the Oklahoma statute upheld in Broadrick excluded employees of institutions of higher education, 74 Okla. Stat. § 703, we are unable to rule that the instant policy would violate the Federal Constitution. See also Willis v. City of Ft. Worth, 380 S.W. 2d 814 (Tex. Civ. App. -- Ft. Worth 1964, writ ref'd n.r.e.).

Article 16, section 40 of the Texas Constitution provides in part:

>State employees . . . shall not be barred from serving
>as members of the governing bodies of school districts,
>cities, towns, or other local governmental districts;
>provided, however, that such State employees or other
>individuals shall receive no salary for serving as members
>of such governing bodies. . . . (emphasis added).

While we have held that this provision was not intended to supersede the common law prohibition concerning incompatible offices, Attorney General Letter Advisory No. 54 (1973), we have also held the provision to constitute an exception to the separation of powers doctrine contained in article 2, section 1 of the Texas Constitution. Attorney General Opinion H-6 (1973). In our view this provision of article 16, section 40 of the Texas Constitution reflects the intent of the people that persons as a general matter may simultaneously be employed by the State and serve as members of the specified governing bodies. It appears to us that a necessary incident of this authorization is the right to be

a candidate for such an office.  Accordingly, we believe it does violence to this provision of the Texas Constitution for a faculty member or staff employee to be routinely dismissed or placed on leave without pay upon becoming a candidate for or holder of one of these local offices, so long as the office sought or held is not legally incompatible with his employment.  We do not suggest that an employee may not be required to continue the adequate performance of his duties, or that termination or a forced leave of absence may not be imposed for failure to devote the time required for the satisfactory discharge of his responsibilities.  Letter Advisory No. 62 (1973).  However, under article 16, section 40 there can be no presumption that he will neglect his duties; any actions taken against such an employee must be on the basis of actual inadequate performance.  See Pickering v. Board of Education, 391 U.S. 563 (1968).

As applied to candidacy for or acceptance of an office other than membership on the governing bodies of school districts, cities, towns, or other local governmental districts, we believe the Board's policy to be valid.  We have discovered no statutory or constitutional provision which would restrict the power of the Board to compel a leave of absence without pay while campaigning, or termination upon acceptance of such an office.  Section 109.21 of the Education Code vests "the government, control, and direction of the policies of the university" in the Board.  In our opinion, this section authorizes the Board to establish and implement the instant policy insofar as it does not conflict with any statutory or constitutional provision.  See Foley v. Benedict, 55 S.W. 2d 805 (Tex. Sup. 1932).  In addition, acceptance of and qualification for an office which an employee may not constitutionally hold simultaneously with his employment at the university will result in an automatic surrender of such employment.  Attorney General Letter Advisory No. 4 (1973); Attorney General Opinion H-155 (1973); see also Centeno v. Inselmann, 519 S.W. 2d 889 (Tex. Civ. App. -- San Antonio 1975, no writ).  In regard to dual office holding by collegiate faculty and staff, see generally Attorney General Letters Advisory Nos. 87 (1974), 55 (1973), 30 (1973), 22 (1973).

You have also asked if a party office such as County Democratic Chairman is a public office within the meaning of the Board's policy.

The matter is determined by the intent of the Board of Regents at the time the rule was promulgated, and the determination of that intent is more properly made by the Board.

## SUMMARY

The Board of Regents of Texas Tech University may not compel a faculty member or staff employee to take a leave of absence without pay or terminate her or his employment upon candidacy for or acceptance of a public office oR membership on the governing board of a school district, city, town, or other local governmental district.  While a faculty member or staff employee must continue the adequate performance of her or his duties, any termination or compelled leave of absence must be a result of actual inadequate performance.

The Board of Regents may compel a faculty member or staff employee to take a leave of absence without pay while campaigning for any other public office, and may terminate her or his employment upon acceptance of such an office.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb